Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:   bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WALTER RYAN, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>        vs.<br><br>OCLARO, INC., EDWARD COLLINS, DENISE HAYLOR, WILLIAM L. SMITH, GREG DOUGHERTY, MARISSA PETERSON, IAN SMALL, KENDALL COWAN, and JOEL A. SMITH III,<br><br>            Defendants. | Case No.: 3:18-cv-03174<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Walter Ryan ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Oclaro, Inc. ("Oclaro" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Oclaro, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Oclaro and Lumentum Holdings Inc. ("Lumentum").

2. On March 11, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's stockholders stand to receive $5.60 in cash and 0.0636 shares of Lumentum common stock for each share of Oclaro stock they own (the "Merger Consideration"), a transaction valued at $9.99 per share of Oclaro or $1.8 billion in the aggregate.

3. On May 17, 2018, in order to convince Oclaro stockholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "S4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the S4, they have failed to disclose certain material information in violation of Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each as required by Section 14(a) of the Exchange Act.

5. In particular, the S4 contains materially incomplete and misleading information concerning: (i) management's financial projections for the Company that were relied upon by the

1

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

Board in recommending the Company's stockholders vote in favor of the Proposed Merger; and (ii) the sale process leading up to the decision to recommend the Proposed Merger.

6.      It is imperative that the material information that has been omitted from the S4 is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Oclaro stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Oclaro is headquartered in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Oclaro common stock.

12.     Defendant Oclaro is incorporated in Delaware and maintains its principal executive

2

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

offices at 225 Charcot Avenue, San Jose, California 95131.  The Company's common stock trades on the NASDAQ GS under the ticker symbol "OCLR."

13.     Individual Defendant Edward Collins has served as a director since 2008.

14.     Individual Defendant Denise Haylor has served as a director since 2016.

15.     Individual Defendant William L. Smith has served as a director since 2012.

16.     Individual Defendant Greg Dougherty has served as Chief Executive Officer since 2013 and has served as a director since 2009.

17.     Individual Defendant Marissa Peterson has served as Chairman of the Board since 2013 and has served as a director since 2011.

18.     Individual Defendant Ian Small has served as a director since September 2017.

19.     Individual Defendant Kendall Cowan has served as a director since 2012.

20.     Individual Defendant Joel A. Smith III has served as a director since 2009.

21.     The Individual Defendants referred to in paragraphs 13-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Oclaro (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of May 11, 2018, there were approximately 177,700,941 shares of Oclaro common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public stockholders of Oclaro will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

     i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

     ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S4 in violation of Section 14(a) of the Exchange Act;

     iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

     iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S4.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1          g.      A class action is superior to other available methods for fairly and efficiently

2 adjudicating the controversy.

3 **SUBSTANTIVE ALLEGATIONS**

4 **The Proposed Merger**

5       24.     Oclaro manufactures and markets optical components, modules, and subsystems

6 used in telecommunications, data communications, aerospace, consumer optics, and

7 semiconductors.

8       25.     On March 12, 2018, Oclaro and Lumentum issued a press release announcing the

9 Proposed Merger, which states in pertinent part:

10

11 **Milpitas, Calif., and San Jose, Calif., March 12, 2018** – Lumentum Holdings Inc. ("Lumentum" or the "Company") a leading provider of photonics products for optical networking and lasers for industrial and consumer markets, and Oclaro, Inc. ("Oclaro") a leader in optical components and modules for the long-haul, metro, and data center markets, today announced that the two companies have signed a definitive agreement, unanimously approved by the boards of directors of both companies, pursuant to which Lumentum will acquire all of the outstanding common stock of Oclaro. For each share of Oclaro stock held, Oclaro stockholders will be entitled to receive $5.60 in cash and 0.0636 of a share of Lumentum common stock, subject to the terms of the definitive agreement. The transaction values Oclaro at $9.99 per share or approximately $1.8 billion in equity value, based on the closing price of Lumentum's stock on March 9, 2018, of $68.98. The transaction value represents a premium of 27% to Oclaro's closing price on March 9, 2018 and a premium of 40% to Oclaro's 30 day average closing price. Oclaro stockholders are expected to own approximately 16% of the combined company at closing.

"Joining forces with Oclaro strengthens our product portfolio, broadens our revenue mix, and positions us strongly for the future needs of our customers. Oclaro brings its leading Indium Phosphide laser and Photonic Integrated Circuit and coherent component and module capabilities to Lumentum. The combined company will drive innovation faster and accelerate the development of products to enable our customers to win," said Alan Lowe, Lumentum's President and CEO. "We are delighted to welcome the talented Oclaro team to Lumentum and look forward to a swift completion of the transaction with a focus on supporting our customers and delivering shareholder value."

"I am very pleased that two of the optical industry leaders, Oclaro and Lumentum, will join forces. Together, we will be an even stronger player in fiber optic components and modules for high-speed communications and a market leader in 3D sensing. This is a fantastic combination for all of our stakeholders, including stockholders, employees, customers and partners," said Greg Dougherty, Oclaro's CEO. "I am extremely proud of what the Oclaro team has accomplished over the last five years. We have enjoyed tremendous success and this combination will create even more exciting opportunities for the team."

5

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**<br>**OF THE SECURITIES EXCHANGE ACT OF 1934**

> The transaction is expected to generate more than $60 million of annual run-rate synergies within 12 to 24 months of the closing and be immediately accretive to non-GAAP earnings per share.
>
> Lumentum intends to fund the cash consideration with a combination of cash on hand from the combined companies' balance sheets and $550 million in debt financing. The transaction is expected to close in the second half of calendar 2018, subject to approval by Oclaro's stockholders, antitrust regulatory approval in the U.S. and China, and other customary closing conditions.

26.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, the Merger Consideration represents an approximate **9% discount** to the Company's 52-week high. Moreover, the Company has reported triple-digit EBITDA growth and exponential Net Income growth for the past two years.

27.     In sum, it appears that Oclaro is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's stockholders. It is imperative that Defendants disclose the material information they have omitted from the S4, discussed in detail below, so that the Company's stockholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**The Materially Incomplete and Misleading S4**

28.     On May 17, 2018, Defendants caused the S4 to be filed with the SEC in connection with the Proposed Merger. The S4 solicits the Company's stockholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the S4 before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the S4 misrepresents and/or omits both required and material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

***The Materiality of Financial Projections***

29.     A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that stockholders vote to approve the transaction.  Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Merger to stockholders. The S4 discloses that the financial projections were prepared by the Company's management "in connection with the process leading to the Merger Agreement," and provided to the Oclaro Board.  S4, 104-05.

30.     When soliciting proxies from stockholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions. In regards to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

31.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  *Id.*

32.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, ***the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.*** In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. ***The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant***

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

*to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

(ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, ***consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.*** An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

33. As discussed further below, the financial projections here do not provide Oclaro's stockholders with a materially complete understanding of the assumptions and key factors, which stockholders would find material since the Board's recommendation that stockholders vote in favor of the Proposed Merger was based, in part, on the following:

The Oclaro Board considered Oclaro's business, assets, financial condition, results of operations, management, competitive position and prospects, as well as current and anticipated industry, international, economic, and stock and credit market conditions. The Oclaro Board also considered Oclaro's financial plan, including the initiatives and the potential execution risks associated with such plan. In connection with these considerations, the Oclaro Board considered the attendant risk that if Oclaro remained independent, Oclaro common stock may not trade at levels equal to or greater than the value of the Merger Consideration in the near term, over an extended period of time, or at all.

S4, 91.

***The Financial Projections are Materially Incomplete***

34. The S4 discloses three sets of financial projections, the December, January, and February Projections for the Company on pages 104-08. However, the S4 fails to provide material information concerning the projections, which were developed by the Company's management and relied upon by the Board in recommending that the stockholders vote in favor of the Proposed Merger. S4, 104-05.

35. Specifically, the S4 provides definitions and values for non-GAAP measures: (1) Non-GAAP Operating Income; (2) Adjusted EBITDA; (3) Free Cash Flow; and (4) Adjusted EPS for all three sets of projections as well as Unlevered Free Cash Flow ("UFCF") based on the February Projections, but fails to provide line items or reconciliation for any of these metrics. S4,

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

107-08.

36.     First, the S4 defines Non-GAAP Operating Income as "Gross Margin (as shown in the table above) and deducting total operating expense," but does not provide total operating expense nor does it provide an explanation of what constitutes total operating expense.  S4, 107.

37.     Second, the S4 discloses that "Adjusted EBITDA is a non-GAAP financial measure calculated by starting with non-GAAP Operating Income (as shown in the table above) and adding back share based compensation, fixed asset disposal and restructuring / M&A charges."  S4, 107.  Nevertheless, the S4 does not provide the values of the line items nor a reconciliation to its most comparable GAAP equivalent.  S4, 107.

38.     Third, the S4 discloses that "Free cash flow is a non-GAAP financial measure calculated by starting with non-GAAP Adjusted EBITDA (as shown in the table above) and deducting capital expenditures."  S4, 107.  The S4 neither provides the values of these line items nor provides a reconciliation to net income, its most comparable GAAP equivalent.  S4, 107.

39.     Fourth, the S4 discloses that "Adjusted EPS is a non-GAAP financial measure calculated by starting with Non-GAAP Operating Income (as shown in the table above) and adding interest income, interest expense and the provision of tax, then dividing that sum by the forecasted diluted share count[,]" but does not provide a definition, the line items used in its calculation, or a reconciliation to its most comparable GAAP equivalent.  S4, 108.

40.     Fifth, the S4 discloses that "Unlevered free cash flow is a non-GAAP financial measure calculated by starting with net operating profit after taxes, adding depreciation and amortization, and subtracting capital expenditures and changes in net working capital, through the fiscal year ending 2022."  S4, 108.  The S4 does not disclose the values of the line items or a reconciliation of the measure to its GAAP equivalent.  S4, 108.

9

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

***The Financial Projections Violate Regulation G***

41.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3] More specifically, the company must disclose the most directly comparable GAAP financial measure **and** a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

42.     Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Oclaro included in the S4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. § 244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002) ("*Final Rule*"), *available at* https://www.sec.gov/rules/final/33-8176.htm.

[4]     *Final Rule.*

[5]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

43.     Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the S4 into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### *The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9*

44.     In addition to the S4's violation of Regulation G, the lack of reconciliation, or at the very least the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as stockholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

45.     Such projections are necessary to make the non-GAAP projections included in the S4 not misleading.   Indeed, Defendants acknowledge the misleading nature of non-GAAP projections, as Oclaro stockholders are cautioned:  "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Oclaro may not be comparable to similarly titled amounts used by other companies."  S4, 107.

46.     As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 104-08, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP

---

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1    measures.

2        ***The Background of the Merger Section is Materially Misleading***

3        47.    The S4 discloses that the Company and certain interested parties entered into non-

4    disclosures agreements ("NDA") in order to facilitate the evaluation of a potential transaction.  S4,

5    81-87.  Although the S4 discloses that the NDA entered into with Company A did not contain

6    standstill provision, the S4 is silent regarding the NDAs entered into with Company D and

7    Company F.  S4, 81-82.  The failure to provide this information regarding one NDA but not all of

8    the NDAs renders the S4 materially misleading.

9        48.    More specifically, the Company's stockholders are unable to determine whether the

10   NDAs contain certain customary provisions such as standstill or "Don't Ask, Don't Waive"

11   ("DADW").  Without further information regarding these NDAs, stockholders are unable to

12   discern whether the Proposed Merger is in fact the best strategic alternative, or whether there is a

13   better alternative that is currently prohibited from being made public.  As a result, the description

14   of the sale process and the NDAs is materially misleading as stockholders are unable to determine

15   whether the two potential bidders are prohibited from making a topping bid.

16       49.    Clearly stockholders would find this information material since the Board's

17   recommendation that stockholders vote in favor of the Proposed Merger was based, in part, on:

18

19       *Strategic Alternatives.* The Oclaro Board, with the assistance of representatives of
         Jefferies and Jones Day, considered the strategic, business and legal considerations
20       relating to a potential transaction with Lumentum and the risks and benefits of a
         potential transaction compared to other potential strategic alternatives, including
21       acquiring companies and disposing of non-core assets, and concluded that while each
         of such other potential alternatives had a variety of qualitative factors that could make
22       it attractive or cause concerns, a potential transaction with Lumentum would likely
         deliver value to Oclaro stockholders that was higher than the values that could be
23       achieved for Oclaro stockholders in other potential strategic alternatives.

24                                          ***

25       *Absence of Competing Offers.* The Oclaro Board noted that, since September 30, 2017,
         Oclaro (i) engaged in discussions with six parties (including Lumentum) potentially
26       interested in acquiring Oclaro, (ii) received preliminary non-binding oral indications
         of interest from three of these interested parties (including Lumentum) and (iii)
27       received only one written Acquisition Proposal, which was submitted by Lumentum
         at a significantly higher valuation than reflected in the indications of interest submitted

28

                                          12

by other interested parties. The Oclaro Board also believed that the benefits of soliciting interest from other potential parties were outweighed by a number of risks, including that such solicitation would further increase market speculation and the potential for leaks, and jeopardize or, at a minimum, delay the proposed transaction with Lumentum. The Oclaro Board also observed that, in the event that any third party were to seek to make a business combination or Acquisition Proposal, Oclaro retained the ability to consider unsolicited proposals after the execution of the Merger Agreement until the meeting of the Oclaro stockholders to vote on the merger proposal and to enter into an agreement with respect to a Superior Proposal under certain circumstances (concurrently with terminating the Merger Agreement and paying a $63 million termination fee to Lumentum).

S4, 93-94.

50.     In sum, the S4 independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.   As the S4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S4 to garner votes in support of the Proposed Merger from Oclaro stockholders.

51.     Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1   Commission may prescribe as necessary or appropriate in the public interest or for the protection

2   of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

3   authorization in respect of any security (other than an exempted security) registered pursuant to

4   section 78l of this title."  15 U.S.C. § 78n(a)(1).

5   54.   As set forth above, the S4 omits information required by SEC Regulation G, 17

6   C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other

7   things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation

8   of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other

9   clearly understandable method" of the non-GAAP measure to the "most directly comparable"

10   GAAP measure.  17 C.F.R. § 244.100(a).

11   55.   The failure to reconcile the numerous non-GAAP financial measures included in

12   the S4 violates Regulation G and constitutes a violation of Section 14(a).

13   <u>**COUNT II**</u>

14   **(Against All Defendants for Violations of Section 14(a) of the Exchange Act**
15   **and Rule 14a-9 Promulgated Thereunder)**

16   56.   Plaintiff incorporates each and every allegation set forth above as if fully set forth

17   herein.

18   57.   SEC Rule 14a-9 prohibits the solicitation of stockholder votes in proxy

19   communications that contain "any statement which, at the time and in the light of the circumstances

20   under which it is made, is false or misleading with respect to any material fact, or which omits to

21   state any material fact necessary in order to make the statements therein not false or misleading[.]"

22   17 C.F.R. § 240.14a-9.

23   58.   Regulation G similarly prohibits the solicitation of stockholder votes by "mak[ing]

24   public a non-GAAP financial measure that, taken together with the information accompanying that

25   measure . . . contains an untrue statement of a material fact or *omits to state a material fact*

26   *necessary in order to make the presentation of the non-GAAP financial measure . . . not*

27   *misleading*."  17 C.F.R. § 244.100(b) (emphasis added).

28

14

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

59.     Defendants have issued the S4 with the intention of soliciting stockholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the S4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

60.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S4, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

61.     The Individual Defendants knew or were negligent in not knowing that the S4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

62.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S4, rendering the sections of the S4 identified above to be materially incomplete and misleading.

63.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the S4.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S4 or failing to notice the material omissions in the S4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

64.     Oclaro is also deemed negligent as a result of the Individual Defendants' negligence

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

1    in preparing and reviewing the S4.

2        65.    The misrepresentations and omissions in the S4 are material to Plaintiff and the

3    Class, who will be deprived of their right to cast an informed vote if such misrepresentations and

4    omissions are not corrected prior to the vote on the Proposed Merger.

5        66.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

6    of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

7    and irreparable injury that Defendants' actions threaten to inflict.

8                                    **COUNT III**

9                        **(Against the Individual Defendants for Violations**
10                       **of Section 20(a) of the Exchange Act)**

11       67.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

12   herein.

13       68.    The Individual Defendants acted as controlling persons of Oclaro within the

14   meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

15   officers and/or directors of Oclaro, and participation in and/or awareness of the Company's

16   operations and/or intimate knowledge of the incomplete and misleading statements contained in

17   the S4 filed with the SEC, they had the power to influence and control and did influence and

18   control, directly or indirectly, the decision making of the Company, including the content and

19   dissemination of the various statements that Plaintiff contends are materially incomplete and

20   misleading.

21       69.    Each of the Individual Defendants was provided with or had unlimited access to

22   copies of the S4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly

23   after these statements were issued and had the ability to prevent the issuance of the statements or

24   cause the statements to be corrected.

25       70.    In particular, each of the Individual Defendants had direct and supervisory

26   involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

27   the power to control or influence the particular transactions giving rise to the Exchange Act

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

1   violations alleged herein, and exercised the same.  The S4 at issue contains the unanimous

2   recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were

3   thus directly involved in preparing the S4.

4       71.     In addition, as described herein and set forth at length in the S4, the Individual

5   Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

6   S4 purports to describe the various issues and information that the Individual Defendants reviewed

7   and considered.  The Individual Defendants participated in drafting and/or gave their input on the

8   content of those descriptions.

9       72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

10  of the Exchange Act.

11      73.     As set forth above, the Individual Defendants had the ability to exercise control

12  over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

13  their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

14  Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

15  result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

16      74.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

17  of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

18  and irreparable injury that Defendants' actions threaten to inflict.

19                          **PRAYER FOR RELIEF**

20      **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

21      A.      Declaring that this action is properly maintainable as a Class Action and certifying

22  Plaintiff as Class Representative and his counsel as Class Counsel;

23      B.      Enjoining Defendants and all persons acting in concert with them from proceeding

24  with the stockholder vote on the Proposed Merger or consummating the Proposed Merger, unless and

25  until the Company discloses the material information discussed above which has been omitted from

26  the S4;

27      C.      Directing Defendants to account to Plaintiff and the Class for all damages sustained as

28

17

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1    a result of their wrongdoing;

2          D.       Awarding Plaintiff the costs and disbursements of this action, including reasonable

3    attorneys' and expert fees and expenses; and

4          E.       Granting such other and further relief as this Court may deem just and proper.

5                                            **JURY DEMAND**

6          Plaintiff demands a trial by jury on all issues so triable.

7

8    Dated:  May 29, 2018

9                                                        Respectfully submitted,

10                                                       **FARUQI & FARUQI, LLP**

11
                                                         By: */s/ Benjamin Heikali*
12   **OF COUNSEL:**                                     Benjamin Heikali, Bar No. 307466
                                                         10866 Wilshire Blvd., Suite 1470
13   **FARUQI & FARUQI, LLP**                            Los Angeles, CA 90024
14   Nadeem Faruqi                                       Tel.: (424) 256-2884
     James M. Wilson, Jr.                                Fax: 424.256.2885
15   685 Third Ave., 26th Fl.                            Email: bheikali@faruqilaw.com
     New York, NY 10017
16   Tel.: (212) 983-9330                                *Counsel for Plaintiff*
     Email: nfaruqi@faruqilaw.com
17   Email: jwilson@faruqilaw.com

18   *Counsel for Plaintiff*

19

20

21

22

23

24

25

26

27

28
                                                   18
     **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
     **OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Walter Ryan ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a draft complaint against Oclaro, Inc. ("Oclara") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.  Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Oclaro securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 23rd day of May, 2018.

Walter Ryan

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 08/02/17 | 450 |
|  |  |  |
|  |  |  |
|  |  |  |